# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| MONICA FARMER,<br><br>Plaintiff,<br><br>v.<br><br>MACY'S, INC. and<br>MACY'S RETAIL HOLDINGS, INC.,<br><br>Defendants. | Civil Action No. TDC-17-0567 |

## MEMORANDUM OPINION

Monica Farmer, a former employee of Macy's, Inc., has filed this civil action against Macy's, Inc. and Macy's Retail Holdings (collectively, "Macy's") in which she alleges discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634 (2018), and on the basis of race, in violation of 42 U.S.C. § 1981 (2012). Pending before the Court is Defendants' Motion to Compel Arbitration and Dismiss, or Alternatively Stay, the Proceedings. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

Monica Farmer began working at the Macy's department store in Alexandria, Virginia on February 17, 2011. According to Farmer, during her employment at Macy's, she was subjected to discrimination, harassment, and a hostile work environment on the basis of age and race. This alleged mistreatment culminated in the termination of her employment on November 5, 2015.

Throughout Farmer's employment at the Alexandria, Virginia location, Macy's used a four-step employee dispute resolution system called Solutions InSTORE ("SIS"). The first three steps of the program are internal to Macy's, allowing employees to raise complaints with, respectively, a local supervisor, the regional Office of Senior Human Resources Management, and the Office of Solutions InSTORE. The fourth step consists of binding arbitration through the American Arbitration Association. Macy's employees are deemed to have agreed to the fourth step, and thereby to have forfeited the right to bring employment disputes in state or federal court, unless they opt out of binding arbitration at the outset of their employment. Specifically, new employees receive from Macy's a New Hire Brochure that includes an opt-out form that, to be effective, must be completed and mailed back to the Office of Solutions InSTORE within 30 days of starting employment at Macy's. The opt-out form, and several other documents in the new hire packet, provide that to opt out of arbitration, an employee must mail the form to a specific address in Ohio. In particular, new hires must electronically sign a form ("the Acknowledgment Form") acknowledging that they have received the SIS documents and affirming that "I understand that if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE." Acknowledgment Form, Reply Mot. Compel Arbitration Ex. I at 91, ECF No. 72-1.

Farmer initiated a Step 1 complaint on January 6, 2015 and then pursued this complaint through Steps 2 and 3. While it is unclear what results Steps 1 and 2 produced, at Step 3 her complaints were denied by Cindy Ripak, the Senior Manager of SIS, who informed Farmer that after investigation, she was not able to substantiate Farmer's claims of "harassment, discrimination

and defamation of character." Ripak Letter (Dec. 22, 2015), Opp'n Mot. Compel Arbitration Ex. 5, ECF No. 60-11.

After the completion of the third SIS step in December 2015, Macy's informed Farmer that if she was not satisfied with this resolution, she could proceed to arbitration. Instead, however, on July 21, 2016, Farmer filed an adversary proceeding against Macy's relating to this issue as part of the proceedings on her personal bankruptcy in the United States Bankruptcy Court for the District of Maryland. In February 2017, Farmer filed a motion to withdraw the reference from the bankruptcy court. After the motion was granted, Farmer filed the currently operative Amended Complaint in this Court. Macy's then filed a Motion to Dismiss, which was granted in February 2019 as to Farmer's Americans with Disabilities Act claims. Macy's has now filed the pending Motion to Compel Arbitration and Dismiss, or Alternatively Stay, the Proceedings.

## DISCUSSION

Macy's claims that Farmer "previously agreed to have all employment-related legal disputes with Defendants resolved exclusively by final and binding arbitration under the Solutions InSTORE Program" and so asks this Court to "compel Plaintiff's claims to arbitration" and "dismiss this action." Mot. Compel Arbitration 1-2, ECF No. 55-1. Farmer disputes the claim that she agreed to arbitration and that the arbitration agreement encompasses her discrimination claims.

### I. Legal Standard

Judges in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F.

Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where "the formation or validity of the arbitration agreement is in dispute," *Caire*, 982 F. Supp. 2d at 589, or where documents outside the pleadings must be considered "to effectively assess the merits of [the] motion," *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). *See also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 & n.3 (4th Cir. 2016) (stating that under the Federal Arbitration Act, a party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment" (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015))). Here, the Court will apply the summary judgment standard both because the parties dispute whether an arbitration agreement was formed and because resolving this dispute requires consideration of materials beyond the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine"

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Arbitration Agreement

Macy's asserts that Farmer agreed to be bound by arbitration because at the time she was hired, she accepted the Macy's SIS and failed to opt out of arbitration by mailing back the opt-out form within the allotted 30 days, as required by the terms of the SIS Acknowledgment Form and the opt-out form itself. Farmer, however, disputes that there was a mail-in requirement to opt out of arbitration and asserts that she completed a paper opt-out form and handed it to the Human Resources ("HR") representative who met with her on her first day of work.

The request to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14 (2018), which provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2. In order for this provision to apply, the United States Court of Appeals for the Fourth Circuit has required that four elements be established: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016). Here, Farmer disputes only the second of these elements, arguing that there is no valid agreement to arbitrate her dispute with Macy's. In deciding whether such a valid arbitration agreement exists between the parties, the Court applies ordinary state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

5

The arbitration agreement that Macy's claims to apply to this dispute arose out of the paperwork that it provided to Farmer when she was hired by Macy's. One of the documents Farmer was given was the Solutions InSTORE New Hire Brochure, which explained the SIS system and stated that unless Farmer opted out, she would be deemed to have consented to binding arbitration and waived her right to file a civil lawsuit against Macy's. Neither party disputes that it constituted an offer. Nor do the parties dispute that the offer was adequately supported by consideration.

The parties do dispute, however, whether Farmer accepted the offered agreement. This dispute turns on the presence of an opt-out provision in the paperwork Macy's provided to Farmer at the time of her hire on February 17, 2011. Macy's has submitted a copy of the SIS Acknowledgment Form that new hires sign affirming that they understand that "if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE." Acknowledgment Form, Reply Mot. Compel Arbitration Ex. I at 91. Macy's has also provided a copy of the opt-out form included in the new hire paperwork that Farmer received, which notified new hires that if they wanted to opt out of arbitration, "your completed form must be returned to the Office of Solutions InSTORE and postmarked no later than 30 days from your hire date." Election Form, Mot. Compel Arbitration Ex. C at 74, ECF No. 55-5. The mailing address provided was a post office box in Mason, Ohio. Farmer, on the other hand, claims that the opt-out form she was given during her meeting with an HR representative on February 17, 2011 "did not require an employee to mail it anywhere." Farmer Decl. ¶ 8, Opp'n Mot. Compel Arbitration Ex. 1, ECF No. 60-2. Instead, she asserts that she signed the opt-out form and immediately handed it back to the HR representative.

6

Under the summary judgment standard that governs this Motion, this dispute over the presence of a mail-in requirement for the opt-out form is material. "A fact is material if it might affect the outcome of the suit under the governing law." *Hupp v. Cook*, 931 F.3d 307, 317 (4th Cir. 2019) (citation omitted). If Macy's is correct that its new hire paperwork required Farmer to mail in the opt-out form, and she did not, then there exists a binding arbitration agreement between the parties because neither party claims that Farmer mailed back the opt-out form, and signing and handing the form back would not have constituted an effective opt-out. *See Baltimore Cty. v. Archway Motors, Inc.*, 370 A.2d 113, 116 (Md. Ct. Spec. App. 1977) ("Under general principles of contract law, when a method of performance necessary to constitute acceptance has been prescribed, performance in some other manner does not constitute acceptance."); Restatement (Second) of Contracts § 50 ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree *in a manner invited or required by the offer*." (emphasis added)). By contrast, if Farmer is correct that the new hire paperwork did not require her to mail back the opt-out form, then her act of signing the form and returning it to her HR representative, if established, would have constituted an effective opt-out. *Maryland Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1025 (Md. 1977) ("We also note that unless otherwise unambiguously indicated by language or circumstances, '[a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances.'" (quoting U.C.C. § 2-206(1)(a))); Restatement (Second) of Contracts § 30(2) ("Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances."). The precise content of the new hire paperwork is therefore a disputed material fact.

However, the summary judgment standard demands not just that there be a disputed material fact, but that this dispute be "genuine." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Hupp*, 931 F.3d at 317 (citation omitted). By contrast, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" for purposes of determining whether there is a genuine issue of material fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, Farmer's account—both in terms of the processing of the new hire paperwork and the content of that paperwork—is "blatantly contradicted" by the record. *See id.* Macy's has provided copies of the documents that new Macy's hires received in 2011. These documents include the Solutions InSTORE Acknowledgment Form, in which new hires confirm their understanding that "if I do not wish to be covered by Step 4, Arbitration, the only way to notify the Company about my choice is by postmarking my election form within 30 days of hire and mailing it to the Office of Solutions InSTORE." Acknowledgment Form, Reply Mot. Compel Arbitration Ex. I at 91. The documents provided also include a copy of the opt-out form distributed to new hires in 2011, which instructs new hires to "return this form only if excluding yourself from participation in the benefits of arbitration under Solutions InSTORE," and that if they want to opt out from arbitration, the "completed [opt-out] form must be returned to the Office of Solutions InSTORE and postmarked no later than 30 days from your hire date," with the identified address listed as "Solutions InSTORE, P.O. Box 8083, Mason, OH 45040-9853." Election Form, Mot. Compel Arbitration Ex. C at 73-74. Ripak, the Director of SIS, has submitted an affidavit stating that in 2011, these documents were "in use for Macy's employees hired in Virginia (including Ms. Graham Farmer)." Ripak Decl. ¶ 21, Mot. Compel Arbitration Ex. 1, ECF No. 55-5.

8

Significantly, Macy's provided evidence that Farmer acknowledged receiving these documents. It included a declaration from Barry Sherrick, the Macy's official who "oversee[s] the management of the online forms that new employees are required to complete and acknowledge prior to beginning work at Macy's," in which Sherrick states that on the date of her hire, "Ms. Graham Farmer was required to enter unique personal information via computer to acknowledge receipt of . . . the Solutions InSTORE New Hire Acknowledgment." Sherrick Decl. ¶¶ 3, 7, Reply Mot. Compel Arbitration, ECF No. 72-1. Macy's has also submitted the Acknowledgment Form received by Farmer, which both certifies that the signatory has received a copy of the Solutions InSTORE brochure and, as noted above, explicitly provides that the opt-out form must be mailed back in order to be effective. Finally, Macy's has provided a copy of Farmer's electronic signature acknowledging receipt of that form.

In support of her account, Farmer submits only her own declaration, in which she states that all forms provided to her when she was hired in 2011 were paper documents, not electronic ones, acknowledges that she was given a paper version of the Solutions InSTORE new hire brochure and an opt-out form, states that she completed and signed the opt-out form and handed it back to the HR representative, and asserts that "there was no mailing requirement of the opt-out form." Farmer Decl. ¶ 12. Farmer provides no information on what the paperwork she was given actually said, but she claims that the forms Macy's has produced cannot have been those she was given because Macy's did not publish an online version of these documents until 2016, as evidenced by materials submitted by Macy's containing notations that the "Solutions InSTORE 2007 Plan" was "first published" or was "created" in 2016, five years after she was hired. Opp'n Mot. Compel Arbitration Exs. 1A-1B, ECF Nos. 60-3 to 60-5. However, a Macy's official has attested to the fact that the internal website containing the documents was created in 2016 but was

9

populated with documents that predated it, an explanation supported by the titles of those documents, which identify them as 2007 plan documents.

Farmer also seeks to undermine the evidence offered by Macy's that she electronically signed the Acknowledgment Form by claiming that she "never electronically acknowledged the documents I was given and or signed," and that when she was hired, "nothing was done online." Farmer Decl. ¶ 6. As to where these purported electronic signatures came from, Farmer argues that Macy's "create[d] a phony electronic signature page with phon[y] SSN number." Opp'n Mot. Compel Arbitration at 3, ECF No. 60-1. However, both Maryland and Virginia have adopted the Uniform Electronic Transactions Act. Md. Code Ann., Com. Law § 21-101 to -120 (LexisNexis 2013); Va. Code Ann. § 59.1-479 to -497 (2014). The Act provides that an "electronic signature is attributable to a person if it was the act of the person," and that "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable." Md. Code Ann., Com. Law § 21-108(a); Va. Code Ann. § 59.1-487(a). Here, Macy's has established that in order to access the online forms during the hiring process, new hires had to enter their social security number, month and date of birth, and zip code. Then, to place an electronic signature on the Solutions InSTORE Acknowledgment Form, a new hire had to again enter the employee's own social security number, month and date of birth, and zip code. If the information did not match the information the new hire provided to access the online forms, the electronic signature would not be effective. Courts in states that have adopted the Uniform Electronic Transactions Act have found that the entry of such personal information as part of an electronic signature constitutes a sufficiently efficacious security procedure. *See, e.g., Strain v. Murphy Oil USA, Inc.*, No. 6:15-cv-3246-MDH, 2016 WL 540810, *3 (W.D. Mo. Feb. 9, 2016) (holding that requiring a social

security number and name was sufficient). The Court similarly holds that requiring a new hire to enter that employee's own social security number, month and date of birth, and zip code satisfies the security requirement of the Uniform Electronic Transactions Act and thus establishes that the electronic signature on the Acknowledgment Form submitted by Macy's is attributable to Farmer.

Thus, where the record contains Farmer's electronic signature acknowledging that she received the forms identified by Macy's requiring the opt-out form to be mailed to a specific location, Farmer's claim regarding the content of the new hire paperwork is blatantly contradicted by the record. Likewise, the existence of this electronic signature squarely refutes Farmer's more general claim that when she completed the new hire paperwork, "nothing about the Solution InSTORE program was online." Farmer Decl. ¶ 5. Consequently, there is no genuine dispute of material fact as to whether the paperwork required new hires to mail in their opt-out forms. Other courts facing similar disputes, including relating to Macy's SIS program, have reached the same result. In *Kietzman v. Macy's Retail Holdings, Inc.*, No. 09-4100-SAC, 2010 WL 11628463 (D. Kan. Feb. 2, 2010), the plaintiff flatly denied the validity of her electronic signature on the SIS Acknowledgment Form that Macy's presented. *Id.* at *4. Finding that this general denial failed to raise a genuine issue of material fact as to whether the plaintiff signed the document, the court compelled arbitration. *Id.* at *6, *9. Likewise, in *Schrock v. Nomac Drilling, LLC*, No. 2:15-cv-1692, 2016 WL 1181484 (W.D. Pa. Mar. 28, 2016), the court held that, where the parties disputed the validity of an electronic signature attributed to the plaintiff, evidence that the signatory was required to enter the last four digits of his social security number and that the plaintiff was physically present at the time of signing meant that plaintiff's denial "failed to create a genuine issue of fact as to whether he assented to" an arbitration agreement with the energy company with which he was employed. *Id.* at *4; *cf. Narez v. Macy's West Stores, Inc.*, No. 16-cv-00936-LHK,

2016 WL 4045376, at *3, *5 (N.D. Cal. July 28, 2016) (holding that where the plaintiff claimed to have received a new hire brochure that specified that only employees hired after a future date—and thus not the plaintiff—would be covered by the arbitration requirement, the fact that the brochure had not actually been created until months after the plaintiff allegedly received it meant there was no genuine issue of material fact regarding whether the parties had entered into an arbitration agreement).

Where there is no genuine issue of material fact as to the content of the new hire paperwork, and the Acknowledgment Form instructed Farmer that the only way she could opt out of binding arbitration was to mail in the opt-out form within 30 days, her undisputed failure to do so establishes the existence of a valid arbitration agreement.

### III. Arbitrability

Farmer also argues that Macy's arbitration agreement does not apply to her or her present claims against Macy's and thus does not compel arbitration of those claims. A court may compel arbitration of a dispute only when "the scope of the parties' agreement permits resolution of the dispute at issue." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Deciding the scope of the arbitration agreement is "primarily a question of contract interpretation, requiring that we give effect to the parties' intentions as expressed in their agreement." *Id.* To the extent the agreement is ambiguous on whether a dispute is arbitrable, this ambiguity must be resolved in favor of arbitration. *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Here, the Solutions InSTORE Plan Document in effect when Farmer was hired, which was given to all new hires, provides that, save for certain exceptions not applicable here, "all

employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law . . . shall be settled exclusively by final and binding arbitration." Plan Document, Mot. Compel Arbitration Ex. A at 21, ECF No. 55-5. This broad language encompasses Farmer's claims, which are all related to either her employment with Macy's or the termination of this employment.

Farmer attempts to withdraw her claims from the reach of the agreement's plain language by pointing to a provision of the arbitration agreement which she claims provides that "after 60 days of being unemployed by Macy's the program ceases to cover such employee." Opp'n Mot. Compel Arbitration at 4. Because Farmer's employment with Macy's was terminated over three years ago, she argues that SIS's binding arbitration does not apply to her. While Farmer provides no citation identifying the relevant provision, it appears that she is referring to a section of the Plan Document providing that if a former Macy's employee "becomes re-employed with the Company following a break in service greater than sixty (60) days, the Associate is treated as a new hire and is given the opportunity to elect to be excluded from arbitration during the prescribed time period." Plan Document, Mot. Compel Arbitration Ex. A at 21. This provision relates only to the application of the arbitration agreement to former employees who are re-hired. It says nothing about the application of the agreement to former employees generally. Rather, the applicability of the agreement to former employees like Farmer is governed by the broad language quoted above, providing that all employment-related disputes are subject to arbitration. Consequently, Farmer's argument that her dispute with Macy's is not subject to mandatory arbitration is unavailing.

## IV. Dismissal

Having determined that Macy's is entitled to have its dispute with Farmer arbitrated, the Court must next decide whether this case should be stayed or dismissed outright. While the Federal Arbitration Act provides that courts should stay proceedings when compelling arbitration of certain claims, *see* 9 U.S.C. § 3, the Fourth Circuit has held that when "all of the issues presented in a lawsuit are arbitrable," "dismissal is the proper remedy," *Choice Hotels Intern. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Here, the arbitration agreement encompasses all of Farmer's claims in this lawsuit, so all of her claims must be arbitrated. Consequently, in addition to granting Defendants' Motion to Compel Arbitration, the Court will dismiss this case.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration and Dismiss, or Alternatively Stay, the Proceedings will be GRANTED. A separate Order shall issue.

Date: October 10, 2019

THEODORE D. CHUANG
United States District Judge